IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STANETTA LAMASTER,
o/b/o D.T., a minor                                                                                    PLAINTIFF

V.                                            NO. 11-5198

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Stanetta Lamaster, brings this action on behalf of her minor son, D.T., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying D.T.'s application for child's supplemental security income (SSI) benefits under Title XVI of the Social Security Act.

**I.    Procedural Background:**

Plaintiff protectively filed the application for SSI on D.T.'s behalf on October 30, 2008, alleging that D.T. was disabled due to "Adhd, depression and anxiety as a result of sexual asslut[sic]." (Tr. 109, 113). An administrative hearing was held on April 26, 2010, at which Plaintiff testified. (Tr. 31-51). Plaintiff was represented by counsel.

The ALJ, in a written decision dated July 6, 2010, found that D.T. was not disabled, as D.T. did not have an impairment that met or was medically or functionally equal to a listed impairment. (Tr. 16).

Plaintiff then requested a review of the hearing decision by the Appeals Council which denied that request on June 24, 2011. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc.

1). The case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

**II.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

The regulations prescribe a three-step process for making the disability determination. First, the ALJ must determine whether the child has engaged in substantial gainful activity. See 20 C.F.R. 416.924(b). Second, the ALJ must determine whether the child has a severe impairment or combination of impairments. See 20 C.F.R. 416.924(c). Third, the ALJ must determine whether the severe impairment(s) meets, medically equals, or functionally equals a listed impairment. See 20 C.F.R. § 416.924(d). Whether D.T.'s impairments are functionally equivalent in severity to any listed impairment may be established by demonstrating marked

limitations in two, or extreme limitations[1] in one of the following "domains." 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being. See 20 C.F.R. §§ 416.926(b)(1), 416.926a(d). The ALJ should consider all relevant evidence in the case to determine whether a child is disabled, and the evidence may come from acceptable medical sources and from a wide variety of "other sources," including teachers. SSR 09-2P. In fact, the Commissioner's regulations for childhood disabilities "provide that parents and teachers, as well as medical providers, are important sources of information." Lawson v. Astrue, 2009 WL 2143754, at *9 (E.D. Mo. July 13, 2009), citing 20 C.F.R. §416.9249. In the present case, the ALJ found that D.T.'s claim failed at step three, as D.T. did not have an impairment that met or medically or functionally equaled a listed impairment.

**III. Discussion:**

What is of concern to the Court is the ALJ's mischaracterization of Teacher Rick Sullins' representation regarding whether D.T.'s behavior was significantly improved when on medication. Although D.T.'s third grade teacher, Gayle Bowman, indicated that D.T.'s behavior

---

[1] (2)Marked limitation -(i)We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean....

(3)Extreme limitation - (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § § 416.926a(e)(2) and (3).

AO72A (Rev. 8/82)

was significantly improved when he was on medication for ADHD, Rick Sullins, D.T.'s fourth grade teacher, completed a Teacher Questionnaire on April 15, 2010, only eleven days prior to the hearing held before the ALJ, indicating that D.T. had some "serious" and "very serious problems" in some of the domains. (Tr. 196-203). However, in his decision, the ALJ stated as follows:

> According to Teacher Questionnaires completed by the claimant's teachers in December 2008, June 2009, and April 2010, the claimant was noted to demonstrate disruptive behavior in the classroom, characterized by frequent outbursts and an inability to focus and pay attention. The teachers all agreed that the claimant's behavior was significantly improved when he took his medications. (Exhibit 4E, 9E, 16E).

(Tr. 19). In Teacher Sullins' questionnaire, he noted that D.T. used a nebulizer/inhaler, but further indicated that he did not know if medication was prescribed for D.T., whether D.T. took the medication on a regular basis, or whether D.T.'s functioning changed after taking medication. (Tr. 202).

It was somewhat surprising to read the serious problems Teacher Sullins indicated D.T. was having, since Teacher Bowman indicated D.T. had very few problems when D.T. was on medication. In Teacher's Sullins' questionnaire, he reported that D.T. had "a serious problem" focusing long enough to finish assigned activity or task (on a daily basis); waiting to take turns (on a daily basis); and working without distracting self or others (on an hourly basis). (Tr. 198). He further stated that D.T. was able to work independently, but tended to rush through his work, and distracted himself and others when he was finished. Teacher Sullins also reported that D.T. required a lot of direct attention. (Tr. 198). Teacher Sullins reported that D.T. has "a very serious problem" seeking attention appropriately (on a daily basis); expressing anger

AO72A
(Rev. 8/82)

appropriately (on a weekly and monthly basis); and asking permission appropriately (on a daily basis). (Tr. 199). Although Teacher Sullins reported that it had not been necessary to implement behavior modification strategies for D.T., he also noted that D.T. worked with the counselor on the issues. (Tr. 199). Teacher Sullins also reported that D.T. refused to wait his turn when seeking attention or asking permission, and that about once a month or more, D.T. screamed and threw himself into a corner. (Tr. 199). He stated that these episodes usually occurred when other students said something he did not like, and that they typically lasted a few minutes, but sometimes longer. (Tr. 199). Teacher Sullins reported that D.T. had "a very serious problem" handling frustration appropriately (on a daily, weekly, and monthly basis), and had "a serious problem" being patient when necessary (on a daily basis); identifying and appropriately asserting emotional needs (on a daily and weekly basis); and using appropriate coping skills to meet daily demands of school environment (on a daily and weekly basis). (Tr. 201). Teacher Sullins also reported that D.T. had frequent outbursts in class, and was very emotional and very sensitive. "Screaming and crying. Rocks in his chair or leans back. Very distractive. He has trouble focusing and paying attention for a period of time." (Tr. 201).

In addition to Teacher Sullins' questionnaire, the Court notes that Plaintiff testified at the hearing, and the medical records support the fact that the doctors have had to increase D.T.'s medication two or three times, and that D.T. was to have another review to see whether it needed to be increased again. (Tr. 40). Plaintiff also testified that Teacher Sullins had called her quite frequently and complained of D.T.'s outbursts in class, throwing himself on the floor or into a corner, throwing objects across the classroom, throwing objects at other students and the teacher. (Tr. 37).

AO72A
(Rev. 8/82)

Based upon the above, the Court cannot tell from the record whether D.T.'s ADHD is, in fact, controlled by medication, as it appears that his behavior changed somewhat in the fourth grade. The Court is of the opinion that the ALJ failed to properly address the findings of Teacher Sullins' Questionnaire, which is significant because he was D.T.'s most recent teacher. Therefore, this matter should be remanded in order for the ALJ to more thoroughly examine and discuss Teacher Sullins' Questionnaire.

Plaintiff also testified that D.T. had been diagnosed with uveitis,[2] which Dr. Paul M. Henry, of the Henry Eye Clinic, P.A., believed was an underlying condition of either rheumatoid arthritis, tuberculosis and sarcoidosis.[3] (Tr. 44). Dr. Henry wrote a letter dated April 23, 2010, enclosing a copy of exam notes during the course of treatment of anterior uveitis[4] for D.T., and information taken from The Wells Eye Manual Third Edition, which lists signs, symptoms, treatment, and possible systemic causes for anterior uveitis. (Tr. 411-419).

At the time of the hearing, Plaintiff testified that D.T. had developed other symptoms, like shortness of breath, and a dry cough, which she said another doctor said were symptoms of sarcoidosis. (Tr. 46-47). She also testified that D.T. had frequent headaches, which was another sign and symptom of uveitis and sarcoidosis. (Tr. 47).

---

[2] Uveitis - An inflammation of part or all of the uvea, commonly involving the other tunics of the eye (sclera, cornea, and retina). Dorlands Illustrated Medical Disctionary 2042 (31st ed. 2007).

[3] Sarcoidosis - A chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles (q.v.). It can affect almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hands and feet. Laboratory findings may include hypercalcemia and hypergammaglobulinemia. There is usually low or absent reactivity to tuberculin, and in active cases the Kveim test is positive. Called also *sarcoid, Besnier-Boeck disease, Boeck disease* or *sarcoid,* and *Schaumann disease, sarcoid,* or *syndrome.* Id. at 1693.

[4] Anterior uveitis - Uveitis involving the structures of the iris and/or ciliary body, including iritis, cyclitis, and iridocyclitis. Id. at 2042.

Upon remand, the ALJ is also advised to obtain updated information from Dr. Henry regarding D.T.'s uveitis, and updated information regarding the diagnosis of sarcoidosis, and should then re-evaluate the functional domains.

## IV.    Conclusion:

For the reasons stated herein, the Court hereby finds that there is not substantial evidence to support the ALJ's findings, and therefore remands this case to the Commissioner for further proceedings consistent with the opinion, pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of July, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)